IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jaclyn Kelly, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) No. 23 C 1867 |
| | ) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion and Order

Jaclyn Kelly brings this suit under the Federal Tort Claims Act (FTCA) for injuries she sustained at the Garden of the Gods Recreation Area. The government has moved for summary judgment on all claims. For the reasons below, the motion is granted.

I.

The following facts are undisputed unless otherwise indicated.

The Garden of the Gods Recreation Area is in Shawnee National Forest in southern Illinois, which is managed by the United States Forest Service. Def.'s L.R. 56.1 Stmt. of Material Facts ("DSMF"), ECF 53 ¶ 1. It is open to the public for recreational use, free of charge for hikers and sightseers. *Id.* ¶¶ 5-6. As a "signature" site, the Garden of the Gods is a developed area that receives a

high concentration of visitor use. Pl.'s L.R. 56.1(b)(3) Stmt. of Add'l Material Facts ("PSAMF"), ECF 65 ¶ 3; Def.'s Resp. to PSAMF, ECF 70 ¶ 3. Chad Deaton, a Forest Recreation Program Manager, testified that the Anvil Rock Trailhead within the Garden of the Gods gets the lowest use in the recreation area. Def.'s Resp. to PSAMF ¶ 3.

On May 7, 2021, Kelly, her boyfriend, Kelly's two daughters, and her boyfriend's son, stopped at the Garden of the Gods Recreation Area for sightseeing and casual hiking. DSMF ¶¶ 7–8. Upon arriving, the group parked their car in a lot near the Observation Trail. *Id.* ¶ 11. They hiked the trail, then walked to a horse tie-up area at the Anvil Rock Trailhead. *Id.* ¶¶ 12–13. There, they rested at picnic tables, and Kelly laid down on a picnic table bench for about five minutes. *Id.* ¶¶ 14–15. When Kelly stood up and began walking, she did not see the nearby metal post with jagged edges that had once supported a grill. *Id.* ¶ 20. She walked into it, cutting the inside of her thigh. *Id.* ¶¶ 16–17.

It is unknown when the pedestal grill was first installed.[1] PSAMF ¶ 13. It was documented as intact in a Forest Service conditions survey in August 2019, DSMF ¶ 24, and Forest Service employees observed it as intact at least as recently as the "high

---

[1] For clarity, this opinion uses the term "pedestal grill" to refer to the combination of the post and the grill. "Post" and "grill" refer to the component parts.

2

recreation season" in 2020, *id.* ¶ 25. Jay Cantieri, a Forest Service recreation technician working in Shawnee National Forest at the time, testified that while he and others were in the relevant area at least once per week between May and July of 2021, he could not recall if the grill was present during that period. Pl.'s Resp. to DSMF, ECF 65 ¶ 26; PSAMF ¶ 31. The first time that Forest Service documents or testimony indicate affirmatively that the grill was missing was in a conditions survey completed on June 30, 2021, over a month after the incident. DSMF ¶ 26.

Kelly herself did not notify the Forest Service about the incident or the missing grill until she filed an administrative claim in November 2021, after which the post was removed. *Id.* ¶¶ 27–28; PSAMF ¶ 35. The Forest Service has no record or knowledge of injuries to anyone other than Kelly involving any grill post in the Shawnee National Forest. DSMF ¶ 29. Cantieri testified that, in a different part of the Garden of the Gods, a similarly exposed post had previously had its edges hammered down, PSAMF ¶ 34, though the government contests the admissibility of this testimony.

Deaton and Cantieri testified that they were aware that pedestal grills get rusty outside. PSAMF ¶ 17; *see* Def. Resp. to PSAMF ¶ 17 (Deaton testified that "ninety percent" of grills exhibited rust). At one point, after being shown a photograph of the post at issue in this case, Deaton testified that the grill "wasn't removed. [It] rusted off." *Id.* ¶ 24. At another, he said

3

that Forest Service employees "do not know how [the grill] came off, when it came off." Def.'s Resp. to PSAMF ¶ 24. In Deaton's view, the post was exposed "no more than a few days" because, given how often employees are in the area, someone would have seen it. PSAMF ¶¶ 27–28. Other Forest Service employees testified that the grill could have been removed by a thief or vandal. Def.'s Resp. to PSAMF ¶ 24. All agree that the post had jagged edges, was a hazard, and, had it been noticed, should have been repaired or removed. PSAMF ¶¶ 25–26; DSMF ¶ 30.

Kelly filed suit under the FTCA on March 24, 2023. She brings claims for premises liability (Count I), negligence (Count II), and willful and wanton conduct (Count III). The government has moved for summary judgment on all counts.

## II.

To prevail at summary judgment, the government bears the burden of demonstrating that the material facts are not genuinely disputed and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding the motion, I resolve conflicts in the evidence and draw all reasonable inferences in Kelly's favor. *McDaniel v. Syed*, 115 F.4th 805, 821–22 (7th Cir. 2024). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

4

(1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that "some metaphysical doubt" is not enough to establish a genuine dispute).

### A.

The government argues that it is doubly immune from liability on Counts I (premises liability) and II (negligence). First, it invokes the FTCA's "discretionary function" exception to liability, which reserves the sovereign immunity the FTCA otherwise waives for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Second, the government relies on the immunity conferred by the Illinois Recreational Use of Land and Water Areas Act, under which "an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." 745 Ill. Comp. Stat. 65/3. That state law applies in this federal case because the FTCA limits its waiver of sovereign immunity to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

5

I need not delve further into these sources of immunity because Kelly concedes that the Illinois Recreational Use of Land and Water Areas Act applies. Accordingly, the government is entitled to summary judgment on Counts I and II on that basis.

Kelly insists that does not end the case because, in her view, there is a question of fact over whether the Forest Service acted willfully and wantonly, which is her claim in Count III. I agree, as does the government, that the Illinois Recreational Use of Land and Water Areas Act only resolves Counts I and II, not Count III. *See* 745 Ill. Comp. Stat. 65/6(a) (stating there is no immunity for "willful and wanton failure to guard or warn against a dangerous condition, use, structure, or activity"). I turn to Count III below.

B.

In Illinois, willful and wanton conduct may be either intentional or reckless. *Munoz v. Nicor Steel Kankakee, Inc.*, 44 F.4th 595, 603 (7th Cir. 2022).[2] Kelly does not assert, nor do her arguments suggest, that the government's conduct was intentional in this case, so only recklessness is at issue. "The Illinois Supreme Court has provided two examples of reckless willful and wanton conduct: (1) 'a failure, after knowledge of impending

---

[2] Illinois courts do not recognize an independent tort of "willful and wanton conduct," but instead consider it an aggravated form of negligence. *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010).

<pre>
</pre>

danger, to exercise ordinary care,' or (2) 'a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'" *Id.* (quoting *Am. Nat'l Bank & Tr. Co. v. City of Chicago*, 735 N.E.2d 551, 557 (Ill. 2000)). "[I]n willful and wanton cases involving defective conditions on land, Illinois courts have repeatedly looked for evidence of knowledge" either of "the danger itself or facts that would imply there was a danger." *Id.* at 603-04 (collecting cases).

A reasonable jury could find based on the record that the Forest Service knew that pedestal grills rusted over time, Deaton Dep., Ex. 6 at 115:14-20; Cantieri Dep., Ex. 7 at 45:17-23, and that an exposed post could pose a risk of harm, Cantieri Dep. at 52:6-9. Kelly points to Cantieri's deposition testimony that one grill--a family grill, which the government emphasizes is different from the pedestal grill at issue here--was replaced because it had rusted to the point that holes began to form and it was at risk of "rust[ing] off." *Id.* at 51:25-52:4, 51:2-11. Taken together, Kelly insists this shows that the Forest Service was aware that grills rusted over time, including to the point that the grill could "rust off" the post, leaving a dangerous exposed post.

However, that evidence does not adequately speak to *this* pedestal grill. Kelly's evidence to suggest that the grill in this case fell off the post (rather than, for example, being taken by

7

vandals or otherwise removed) is scant. It consists of the evidence reviewed above that there was a general understanding that grills could reach the point of rusting off, plus some of Deaton's deposition testimony when he was shown a photograph of the exposed post: "Oh, it rusted off." Deaton Dep. at 111:2-5; *see id.* at 111:11-19 ("That wasn't removed. That's rusted off. I've never seen this picture. . . . "It's obvious the grill rusted off there and fell off. . . . So that's rusted off in my opinion."). *But see id.* at 112:12-16 (stating that he "d[id] not know how that [post] came off, when it came off.").

Even if a jury credited Deaton's testimony that the grill in this case "rusted off," it would be too thin a reed on which to rest a finding for Kelly. Critically, Deaton did not--and probably could not--testify that, before the grill at issue either fell off or was removed from the post it was in such a condition that a Forest Service employee should have known it needed maintenance. But that is a key fact for showing that the Forest Service had knowledge of "facts that would imply there was a danger." *Munoz*, 44 F.4th at 603-04. Kelly's suggestion that Forest Service employees' failure to adequately inspect the area also falls flat because, as explained further below, there is no history of similar injuries that would have put the Forest Service on notice of the need to inspect areas for this type of defect. *Cf. Munoz*, 44 F.4th at 604 (despite fact that defendant required inspections of

staircase that caused injury to plaintiff because it was rusted, "that fact alone does not yield the conclusion that [defendant] knew or should have known that the staircase was rusted. At most, this evidence shows that Nucor may have been inattentive or dilatory in its inspections.").

Compounding Kelly's evidentiary problems, the record does not reveal how long the post was exposed prior to the accident. The pedestal grill was documented as intact in an August 2019 survey, DSMF ¶ 24, and Forest Service employees noted the same at least as of the 2020 recreation season, DSMF ¶ 25.[3] All the evidence shows is that the grill was missing at the time Kelly and her family entered the picnic area and that it was not missing at the end of the 2020 season. When the grill disappeared in that window cannot be determined based on Kelly's evidence. And if, for example, the grill disappeared the morning of the accident, a jury could not reasonably find that Forest Service employees should have discovered it before Kelly's injury. All told, a jury would have to speculate about how the grill came off and how long it was missing. *See Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d

---

[3] Kelly points out the inconsistency between Deaton's testimony that the post would have been noticed within "a few days" of becoming exposed, Deaton Dep. at 114:3-15, and the reality that the exposed post went unnoticed for about one month after Kelly's accident, DSMF ¶ 26. Still, this only says something about the post after Kelly's accident, not about its condition leading up to it.

9

728, 733 (N.D. Ill. 2017) ("'[G]uesswork and speculation are not enough to avoid summary judgment.'" (quoting *Perez v. Thorntons, Inc.*, 731 F.3d 699, 716 (7th Cir. 2013))).

In an analogous case from an Illinois appellate court concerning whether a local park district could be held liable for willful and wanton conduct, the court explained the issue of liability this way:

> Willful and wanton conduct may be found to exist where the local public entity takes no action to correct a condition even though it was informed about the dangerous condition and knew that other persons had previously been injured because of the dangerous condition. Also, a local public entity may be found to have engaged in willful and wanton conduct when it intentionally removes a safety feature from its recreational property. However, where there are no facts or allegations to show that the local public entity engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition, the conduct of the local public entity does not rise to the level of willful and wanton conduct.

*Murphy v. Springfield Park Dist.*, 146 N.E.3d 143, 152 (Ill. App. Ct. 2019) (citations and internal quotation marks omitted).[4]

In *Murphy*, the plaintiff struck a "round, metal collar designed to hold a steel bollard" in the middle of the bike path on which he was biking. 146 N.E.3d at 145. All agreed that the

---

[4] While this case considered "willful and wanton" conduct in the context of a different state statute, the Illinois Supreme Court "has consistently applied the definition of willful and wanton conduct stated in IPI Civil 3d [Illinois Pattern Civil Jury Instructions] No. 14.01 to all cases, whether on a statutory immunity provision, or at common law." *Murray v. Chi. Youth Ctr.*, 864 N.E.2d 176, 192 (Ill. 2007).

10

missing bollard created a hazard. *Id.* at 153. Moreover, the evidence showed that the park district occasionally removed bollards while performing certain types of work, and that the park district knew that bollards sometimes went missing for unknown reasons. *Id.* at 153, 155. Nonetheless, because there was no evidence to establish that the park district was aware "that this particular bollard had been removed" or that it was aware "that the removal of any bollard had ever caused any injury to a visitor," it was entitled to summary judgment. *Id.* at 155 (citation omitted).

Here, as in *Murhpy*, it is clear that an exposed post is a hazard, and there is evidence from which a jury could conclude that the Forest Service was aware that pedestal grills could deteriorate to the point that the grill fell off. But Kelly has failed to adduce evidence that the Forest Service knew that the specific pedestal grill whose post injured her had come apart--or even was in danger of doing so--or that there were similar injuries in the past. Nor does she show an act by the Forest Service that removed a safety feature or otherwise affirmatively created the dangerous condition. *See Tagliere v. W. Springs Park Dist.*, 944 N.E.2d 884, 894 (Ill. App. Ct. 2011) (finding no willful and wanton conduct where there was "no evidence the [defendant] Park District knew or should have known others had been injured because of the

11

condition, or that it intentionally removed a safety device or feature from the seesaw" that harmed the plaintiff).

Evidence that could support a claim for negligence--and there may well be such evidence here--is not always sufficient under the heightened willful and wanton conduct standard. Kelly's evidence falls short of that higher bar. Accordingly, the government is entitled to summary judgment on Count III.

### III.

For the foregoing reasons, the government's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 15, 2025